SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe (JGM 0919)
Sally McDonald Henry (SMH 0839)


\- and -


300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
(213) 687-5000
Douglas B. Adler (DBA 6013)
Richard Levin

Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| REFCO INC., et al., | : | Case No. 05-60006 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| REFCO CAPITAL MARKETS, LTD., | : | |
| REFCO F/X ASSOCIATES, LLC, | : | |
| | : | Adv. Proc. No. |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ACM ADVANCED CURRENCY | : | |
| MARKETS S.A., LLOYD LA MARCA, | : | |
| ALEXANDER AXARLIS, BENOÎT | : | |
| SAUVAIN, AND NICHOLAS BANG, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**VERIFIED COMPLAINT**

Plaintiffs Refco Capital Markets, LTD., ("RCM") and Refco F/X

Associates, LLC ("RFX") (collectively "Debtors"), as debtors and debtors in possession,

by and through their undersigned attorneys, allege upon knowledge as to themselves and

their own acts and upon information and belief as to all other matters as follows:

## NATURE OF CASE

      1.      This is an action for (i) temporary, preliminary, and permanent

injunctive relief against Defendants, ACM Advanced Currency Markets S.A. ("ACM")

and its four minority shareholders, to enjoin them from violating the automatic stay,

interfering with Debtors' administration of their estates, and engaging in similar

misconduct, (ii) declaratory relief, (iii) avoidance and recovery of postpetition transfers

caused by Defendants, and (iv) damages, as well as sanctions, costs, expenses and

attorneys' fees, arising from Defendants' willful violations of the automatic stay.

      2.      After the Petition Date, and while three of ACM's minority

shareholders were negotiating with Debtors to purchase their controlling interest in ACM,

the three minority shareholders caused ACM to surreptitiously attempt to divest Debtors

of their position as ACM's controlling shareholders and to divert value from the estates'

bearer shares of ACM stock to the minority shareholders' new and existing bearer shares.

Defendants attempted this by causing ACM to convene an extraordinary general meeting

of shareholders, without Debtors' knowledge.  At that meeting, ACM's minority

shareholders purportedly authorized a capital increase of CHF 1'500'000 (1,500,000

Swiss francs[1]), by issuing 1,500 additional shares ("Additional Shares") at a par value of

CHF 1'000 each.  About 30 minutes later, ACM declared that Debtors had failed to

exercise their right to subscribe to their pro rata share of the 1,500 Additional Shares and,

notwithstanding the automatic stay, transferred the estates' subscription rights to the

minority shareholders.  Tellingly, the four minority shareholders had four days earlier

deposited funds with a Swiss bank sufficient to exercise their own subscription rights, as

well as the subscription rights that would belong to these bankruptcy estates (but which,

of course, could not be exercised until four days later).  The minority shareholders'

prescience, that Debtors would not attend the shareholder meeting, turned out of course

to be true, which is not surprising given ACM's failure to give Debtors direct or

otherwise proper notice of the meeting.

        3.      Defendants' stay violations, subterfuge, and misconduct, if not

reversed, would significantly and irrevocably reduce the value of Debtors' estates, to the

corresponding unfair and unearned enrichment of the minority shareholders.  Defendants'

wrongful postpetition transfer of Debtors' subscription rights to the minority shareholders

has reduced the estates' holdings from 51% to 25.5% of ACM's shares.  As the Court is

well aware, the shares of a controlling shareholder enjoy a premium compared to shares

held by non-controlling shareholders.  In addition, the fair market value of the 1,500

shares issued to the minority shareholders is significantly more than the CHF 1'000 par

value they paid, thus reducing the value of the estates' existing shares.  Defendants'

---

[1]    One Swiss franc currently converts to about $0.75.

actions, if allowed to stand, would severely reduce the value of the estates' shares in ACM, and Debtors seek an order declaring that Defendants have violated the automatic stay, declaring that Defendants' actions were willful violations under the Bankruptcy Code, enjoining Defendants from further violating the automatic stay, and ordering ACM to remedy its violations of the automatic stay by taking actions to retrieve shares issued, deregister the capital increase, and rescind certain other shareholder and board resolutions. Debtors also seek to avoid the transactions as unauthorized postpetition transfers of estate property and to recover damages.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334.

5.      This action is a core proceeding under 28 U.S.C. § 157(b).

6.      Venue is proper as provided in 28 U.S.C. § 1409 because this proceeding arises in and is related to Debtors' bankruptcy cases pending in this district.

7.      This Court has personal jurisdiction over Defendant ACM because ACM has submitted to this Court's jurisdiction by entering an appearance in the Debtors' bankruptcy cases and by appearing in this Court in connection with these cases.  This Court has personal jurisdiction over Defendants Lloyd La Marca, Alexander Axarlis, and Nicholas Bang because each delivered to the Debtors in New York an expression of interest in buying the estates' ACM shares, retained counsel in New York, and negotiated in New York to purchase the estates' ACM shares, acknowledging that that any transaction would be subject to approval by this Court.  This Court has personal

4

jurisdiction over Defendant Benoît Sauvain, who participated with the other three

individual defendants herein to depress the value of property of the estates for the benefit

of the three others in their New York negotiations.

8.    The statutory predicates for the relief requested herein are

11 U.S.C. §§ 105 and 362, 28 U.S.C. §§ 2201 and 2202, and Fed. R. Bankr. P. 7001 and

7065.

## PARTIES

9.    Debtor Refco, Inc. ("Refco") and all of its direct and indirect

subsidiaries (together with Refco, the "Company") are providers of execution and

clearing services for exchange-traded derivatives and a major provider of prime

brokerage services in the fixed income and foreign exchange markets.[2]  The Company

offers its customers rapid, low-cost trade execution and clearing services on a broad

spectrum of derivatives exchanges and over-the-counter markets.  In 2004, the Company

was the largest provider of customer transaction volume to the Chicago Mercantile

Exchange, the largest derivatives exchange in the United States.  The Company serves

accounts from over twenty locations in over ten countries.  Its customers include

corporations, government agencies, hedge funds, managed futures funds, pension funds,

financial institutions, retail clients and professional traders.

10.    Debtor RCM is a non-regulated entity incorporated under the laws

of Bermuda, with operations in New York City.

---

[2]    Only Refco and certain of its non-regulated subsidiaries, as listed on Exhibit A to the Declaration of
Dennis Klejna under Local Bankruptcy Rule 1007-2 And In Support Of Chapter 11 Petitions and First
Day Orders (D.I. 9), are the chapter 11 Debtors in these cases.

11.     Debtor RFX is a New York limited liability company with its principal place of business in New York.

12.     Defendant ACM is an investment company located in Geneva, Switzerland.  ACM provides an online platform that allows members of the general public to execute foreign exchange trades.  On November 17, 2005 ACM appeared in the bankruptcy case through its counsel.  (D.I. 497, 524)  RCM and RFX together own 51% of the shares in ACM.

13.     Defendants La Marca, Axarlis, Bang and Sauvain are individuals residing or doing business in Switzerland.

## FACTUAL BACKGROUND

A.     **Debtors' Interests in ACM**

14.     RFX purchased 128 bearer shares with a par value of CHF 1'000 each (51% of the share capital) in ACM on June 29, 2004 from ACM's four founders, Defendants La Marca, Axarlis, Bang and Sauvain.  In May 2005, as a result of a prior capital increase in ACM, RCM subscribed to and purchased 640 additional bearer shares at their par value of CHF 1'000 each.  Following this capital increase, the share capital of ACM amounted to CHF 1'500'000, divided into 1,500 bearer shares of CHF 1'000 each.  RCM and RFX together held 768 shares (the "Refco Shares"), out of a total of 1,500, thus retaining their majority stake of approximately 51%.

B.     **The Chapter 11 Filings and Precipitating Events**

15.     On October 10, 2005, Refco discovered through an internal review a receivable owed to the Company by an entity controlled by Phillip R. Bennett, Chief

6

Executive Officer and Chairman of the Board of Directors, in the amount of
approximately $430 million.  Mr. Bennett then took a leave of absence at the request of
Refco's board of directors.  Almost immediately a number of account holders sought to
withdraw their funds from RCM.

16.     On October 17, 2005 (the "Petition Date"), each of the Debtors
filed a voluntary petition in this Court for reorganization relief under chapter 11 of the
Bankruptcy Code.  The Debtors continue to operate their businesses and manage their
properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the
Bankruptcy Code.

17.     No trustee or examiner has been appointed in any of the Debtors'
chapter 11 cases.  On October 28, 2005, the Office of the United States Trustee appointed
an Official Committee of Unsecured Creditors.

**C.     The Defendants Willfully Violated The Automatic Stay.**

18.     After the Petition Date, three of ACM's minority shareholders,
Defendants La Marca, Axarlis and Bang, delivered to the Debtors in New York a letter
dated October 24, 2005, expressing their interest in purchasing the Refco Shares from the
Debtors' bankruptcy estates.  Negotiations ensued in New York (between New York
attorneys for both sides) concerning the sale and purchase of the Refco Shares, with the
understanding that the sale would be subject to approval by this Court and the conduct of
an auction in accordance with an order of this Court.

19.     While negotiating this potential purchase, and unknown to Debtors,
the four minority shareholders were planning and attempting to severely dilute the

7

estates' holdings, divesting the estates of their control position with respect to ACM, all

in a direct response to the precipitating events described above and to the Company's

bankruptcy petitions.

20.     The minority shareholders caused ACM's board of directors to call

an extraordinary meeting of shareholders by publishing the notice attached as Exhibit A

in the Swiss Official Commercial Gazette on October 26, 2005, which notice translates as

follows:

**ACM ADVANCED CURRENCY MARKETS SA**
**Notice convening an extraordinary shareholders' meeting**
to be held on November 15, 2005, at 11:00 a.m., in the offices of M.
Jacques WICHT, notary public,  29, rue du Rhône, Geneva.
**Agenda:**
1.  **Increase of the share capital of the company**
2.  **Revocation of members of the board of directors**
3.  **Appointment of new member of the board of directors.**
Geneva, October 19, 2005
                                        On behalf of the board of directors

Defendants, however, failed to give direct or otherwise proper notice of the shareholder

meeting to the Debtors, nor did the Debtors learn of the meeting until after it had

occurred.

21.     ACM's board convened the shareholder meeting on November 15,

2005, at 11:00 a.m.  The shareholder meeting was chaired by Mr. Jean-Franklin Woodtli,

who had been appointed by the minority shareholders.  One of his associates,

Mr. Bertrand Pariat, acted as secretary.  The only shares represented at the meeting were

the 732 shares held by the minority shareholders.

22.    The general meeting passed the following resolutions: (1) to increase the share capital of ACM by CHF 1'500'000 by issuing at par 1,500 new bearer shares with a par value of CHF 1'000 each; (2) to accept the resignation of Mr. Dante Canonica and to revoke Mr. Santo C. Maggio (both appointed by Debtors) as members of the board of directors; and (3) to appoint Mr. Bertrand Pariat as a new member of the board of directors.

23.    At 11:30 a.m., ACM's board (now composed of Messrs. Woodtli and Pariat) met to implement the capital increase resolved by the general meeting of the shareholders:

- The board declared that the preferential subscription right has not been exercised by certain shareholders (i.e., RCM and RFX) and that the unexercised subscription rights would therefore pass on to the other shareholders pro rata their share (i.e., to the minority shareholders);

- The board acknowledged that all of the shares to be issued as a result of the capital increase had been subscribed by the minority shareholders;

- The board also acknowledged that the funds necessary for the subscription had been deposited with a third party four days earlier, on November 11, 2005, by the minority shareholders;

- In view of the above, the board concluded that the capital increase was completed and resolved to register the capital increase with the commercial register of Geneva.

24.    The ACM board caused the capital increase to be registered on November 18, 2005.  Registration generally places a company in a position to issue shares as part of a capital increase.

25.    The foregoing actions occurred without the knowledge or consent of Debtors.  The Debtors first learned of these events on or about November 21, 2005.

9

On November 23, 2005, the Debtors promptly sought and obtained from a court in

Geneva a preliminary injunction to protect their rights and maintain the status quo.  The

Geneva court preliminarily prohibited ACM from issuing any Additional Shares and

caused the newly issued shares to be seized pending resolution of Debtors' claims.

26.     Defendants acted to dilute Debtors' majority interest in ACM with

full knowledge of the pendency of the Debtors' bankruptcy cases.  The interested buyers'

October 24, 2005 expression of interest expressly made Court approval a condition to

their any offer to purchase of the estates' Refco Shares.  Thus, Defendants were fully

aware that Debtors were involved in bankruptcy cases when they caused ACM to call the

general meeting on October 24, 2005.  Defendant ACM later appeared in the Debtors'

chapter 11 cases, and also requested notice pursuant to Bankruptcy Rule 9010(b).

27.     Moreover, a series of press releases demonstrated that the

Defendants acted in response to Debtors' bankruptcy.   On November 22, 2005,

Defendants issued a press release asserting that they "managed to re-acquire" the Debtors'

controlling interests in ACM, noting that "the incident with Refco occurred about 6

weeks ago."  The first press release, attached as Exhibit B, states that:

> **The three co-founding partners of ACM Advanced Currency
> Markets SA,** a global leader in online foreign exchange execution **re-
> acquire close to 100% of ACM's share capital from Refco**.  Geneva,
> November 22nd, 2005 - Following recent events which took place in the
> United States, around one of its shareholders - The Refco Group - **the
> three co-founding partners and directors of ACM Advanced
> Currency Markets SA managed to re-acquire the majority
> shareholding and therefore the controlling stake of their company**.
> Discussions are currently taking place around the repurchase of the
> remaining minority participation that Refco still owns. This new turn of
> events strengthens ACM's position enormously since the company can
> now continue to operate completely autonomously of Refco which

10

reputation has suffered tremendously of late. The new shareholding structure will undoubtedly strongly reassure ACM customers and partners alike as to the strength and competence of ACM's management and the continued financial growth of the online broker. "Since the incident with Refco occurred about 6 weeks ago it has been of crucial importance for us to show our customers and partners that we have not been affected and to impress upon them that they are clients of a strong and trustworthy company. I think we have now proven that ACM is capable of weathering any situation and come out a winner" Said Nicholas Bang, managing director and partner of ACM.

(Emphasis supplied.)

28.     The Debtors issued a corrective press release, attached as

Exhibit C, the next day:

Refco Inc., a Delaware corporation, is aware of certain news articles suggesting that Refco sold a portion of its interest in ACM Advanced Currency Markets SA, a company incorporated under the laws of Switzerland.  Such articles are erroneous.  Refco continues to hold 768 shares of capital stock of ACM and has not sold any such shares to date.

Yesterday Refco became aware of an attempt by the minority shareholders of ACM to increase the share capitalization of ACM thereby diluting Refco's interest in ACM without the participation or knowledge of Refco.

Refco has filed a request with the Geneva courts seeking a provisional injunction challenging the action of the minority shareholders.  The provisional injunction is pending.

Refco intends to sell its ACM shares pursuant to an auction supervised by the United States Bankruptcy Court for the Southern District of New York.

29.     Defendants responded by acknowledging that they acted to take

back control of ACM because of the financial distress that prompted the Company's

bankruptcy petitions and their belief that ACM has a significant claim against the

Company.   That second press release, attached as Exhibit D, states:

11

> We are surprised by Refco's reaction and their statement is incorrect. Our statement of yesterday says that we managed to re-gain majority control of ACM Advanced Currency Markets. In October an increase in  share capital was voted by the board of directors of ACM which was appointed and approved by Refco and in compliance with Swiss Law. **Refco did not participate in the share-capital increase** and contrary to their allegations, the share capital increase is not an attempt, has been already approved and has been published in the registry of commerce of Geneva. **Nowhere did we say in our original press release that we bought any shares from Refco.**
>
> More surprising still is their statement that they are seeking an injunction in a Swiss court. **Given the circumstances and the fact that we have suffered from actions perpetrated by Refco, namely allegedly misleading investors and partners around the world (including ACM) with years of false financial statements and allegedly commiting massive securities fraud** it seems preposterous that Refco believe they have a claim against us. On the contrary **it seems more likely that we have a claim against Refco** especialy since we are amongst the long list of creditors.

(Emphasis supplied.)

30.     Thus, Defendants' actions in violation of the automatic stay were willful.  Plainly, Defendants seek to punish the estates' creditors and other innocent stakeholders by  exercising control over property of the estate and depleting the assets available for reorganization or distribution, all based on the actions of Refco's now dismissed management and because Refco and its affiliates have filed chapter 11 cases.

## FIRST CAUSE OF ACTION
## VIOLATION OF 11 U.S.C. § 362

31.     Debtors repeat and reallege the foregoing allegations as if set forth fully herein.

32.     Section 362(a)(3) of the Bankruptcy Code prohibits:

12

any act to obtain possession of property of the estate or of
property from the estate or to exercise control over property
of the estate.

33.     The Debtors' interest in ACM constitutes property of the
bankruptcy estate.

34.     Defendants' actions to dilute Debtors' interests constitute an
improper attempt to exercise control over property of the estates.  Defendants' actions to
transfer Debtors' preference subscription rights constitute an act to obtain possession of
property from the estate and to exercise control over property of the estate.  Defendants'
actions have also interfered with the administration of Debtors' estates and Debtors'
efforts to reorganize.

35.     If Defendants succeed in their efforts to have ACM issue
additional capital and dilute Debtors' holdings in ACM, the Debtors and their estates will
be irreparably harmed.

36.     The Defendants were aware of the Debtors' chapter 11 cases since
(or shortly after) the commencement of the same. Defendants' actions constitute willful
violations of the automatic stay.

## SECOND CAUSE OF ACTION
## UNAUTHORIZED POSTPETITION TRANSFER - 11 U.S.C. § 549

37.     Debtors repeat and reallege the foregoing allegations as if set forth
fully herein.

38.     The purported capital increase and the transfer of Debtors'
subscription rights from Debtors to the minority shareholders constitute unauthorized
postpetition transfers under 11 U.S.C. § 549.

13

**SECOND CAUSE OF ACTION**
**DECLARATORY RELIEF - 11 U.S.C. § 362**

39.     Debtors repeat and reallege the foregoing allegations as if set forth

fully herein.

40.     An actual controversy exists between the Debtors and Defendants,

in that the Debtors contend that Defendants' acts and omissions, as alleged above,

willfully violated the automatic stay, are void ab initio, and constitute unauthorized

postpetition transfers of property of the Debtors' estates, and Defendants contend that

they own the property at issue.

41.     The Court should declare that the Defendants the capital increase,

the transfer of the Debtors' subscription rights to Defendants and Defendants' attempt to

exercise those rights willfully violate the automatic stay, are void ab initio, and constitute

unauthorized transfers of property of the Debtors' estates.

**RELIEF REQUESTED**

WHEREFORE, Debtors respectfully request that the Court enter judgment:

A.     Declaring that the Defendants have violated the automatic stay pursuant to

section 362(a)(3) of the Bankruptcy Code;

B.     Declaring that the Defendants' violations of the automatic stay were

willful violations under section 362(h) of the Bankruptcy Code;

C.     Preliminarily and permanently enjoining the Defendants and their counsel,

agents, employees and all other persons acting under, in concert with, or

for them, from violating the automatic stay, including without limitation:

14

(1)     issuing any shares of ACM that reduces or further reduces the
        percentage of shares in the aggregate held by RCM and RFX
        below 51% of all outstanding shares;

(2)     disposing of any of the proceeds from the November 15, 2005
        ACM capital increase; and/or

(3)     delivering any ACM shares (regardless of whether ACM has
        received payment or other consideration for those shares)
        previously issued as a result of the increase in the share capital of
        ACM purportedly authorized on or about November 15, 2005.

D.      Ordering Defendants to remedy the automatic stay violations and other

        wrongful conduct that already occurred by:

(1)     Taking all steps necessary to immediately confirm that purported
        authorization to increase the share capital of ACM by shareholders
        on or about November 15, 2005, the subsequent registration of the
        capital increase with the commercial register of Geneva, and the
        issuance of Additional Shares in ACM as a result of the purported
        capital increase were void ab initio and of no effect, in Switzerland
        or elsewhere;

(2)     Instructing the minority shareholders and those persons under the
        Defendants' employment, direction or control to return the
        Additional Shares for cancellation or other appropriate action
        under Swiss law and not to exercise any rights with respect to the
        Additional Shares;

(3)     After cancellation of Additional Shares or other appropriate action
        under the prior paragraph, returning (without interest or otherwise)
        any consideration received in exchange for the corresponding
        Additional Shares;

(4)     Taking all steps available to immediately reverse, or otherwise
        cancel the effect of, the registration of the capital increase with the
        commercial register of Geneva.

E.      Awarding damages, and such interest as may be permitted by law, as a

        result of the Defendants' willful violations of the automatic stay;

F.      Awarding Debtors their reasonable and necessary attorney's fees to the

extent permitted by law through and including trial and for any subsequent

appeal;

G.      Avoiding the capital increase and the transfer of Debtors' subscription

rights to the minority shareholders;

H.      Directing that Debtors may recover, for the benefit of their estates, from

the Defendants the property transferred or the value of the property

transferred;

I.      Awarding Debtors their costs and expenses incurred in connection with

this action; and

J.    Awarding Debtors such other and further relief as the Court deems just

and proper.

Dated: December 5, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _/s/ Sally McDonald Henry_____
J. Gregory Milmoe (JGM 0919)
Sally McDonald Henry (SMH 0839)
Four Times Square
New York, New York 10036
(212) 735-3000

- and -

Douglas B. Adler (DA 6013)
Richard Levin
300 South Grand Avenue
Suite 3400
Los Angeles, California  90071
(213) 687-5000

Attorneys for the Debtors and
  Debtors-in-Possession

**<u>Verification</u>**

I, Robert N. Dangremond, declare:

I am the Court-designated Interim Chief Restructuring Office of the Debtors.  In that capacity, I have become familiar with the books, records and institutional knowledge of the Debtors with respect to recent events involving the Debtors' interests in ACM Advanced Currency Markets S.A.  I have read the foregoing Verified Complaint.  The facts stated therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at New York, New York, on December 5, 2005.


  /s/ Robert N. Dangremond           
ROBERT N. DANGREMOND

## Exhibit A

**Unternehmenspublikationen** Publications d'entreprises Pubblicazioni d'imprese

**No 208 Mittwoch, 26.10.2005 123. Jahrgang**

## ACM ADVANCED CURRENCY MARKETS SA

### Convocation à une assemblée générale extraordinaire

le 15 novembre 2005, à 11 h, en l'Etude de Me Jacques WICHT, notaire, 29, rue du Rhône, à Genève.

**Ordre du jour:**

**1. Augmentation du capital de la société**

**2. Révocation d'un membre du conseil d'administration**

**3. Nomination d'un nouvel administrateur**

Genève, 19 octobre 2005

Le conseil d'administration

297589

Exhibit A

## **Exhibit B**

# ACM Advanced Currency Statement: Purchase From Refco

(The following is a reformatted version of a statement sent to Bloomberg News)

PRESS RELEASE: The three co-founding partners of ACM Advanced Currency Markets SA, a global leader in online foreign exchange execution re-acquire close to 100% of ACM's share capital from Refco.

Geneva, November 22nd, 2005 - Following recent events which took place in the United States, around one of its shareholders - The Refco Group - the three co-founding partners and directors of ACM Advanced Currency Markets SA managed to re-acquire the majority shareholding and therefore the controlling stake of their company. Discussions are currently taking place around the repurchase of the remaining minority participation that Refco still owns. This new turn of events strengthens ACM's position enormously since the company can now continue to operate completely autonomously of Refco which reputation has suffered tremendously of late. The new shareholding structure will undoubtedly strongly reassure ACM customers and partners alike as to the strength and competence of ACM's management and the continued financial growth of the online broker. "Since the incident with Refco occurred about 6 weeks ago it has been of crucial importance for us to show our customers and partners that we have not been affected and to impress upon them that they are clients of a strong and trustworthy company. I think we have now proven that ACM is capable of weathering any situation and come out a winner" Said Nicholas Bang, managing director and partner of ACM.

#<702031.103297.76>#

*Last Updated: November 22, 2005 21:22 EST*

# Exhibit B

**<u>Exhibit C</u>**

Refco Inc., a Delaware corporation, is aware of certain news articles suggesting that Refco sold a portion of its interest in ACM Advanced Currency Markets SA, a company incorporated under the laws of Switzerland.  Such articles are erroneous.  Refco continues to hold 768 shares of capital stock of ACM and has not sold any such shares to date.

Yesterday Refco became aware of an attempt by the minority shareholders of ACM to increase the share capitalization of ACM thereby diluting Refco's interest in ACM without the participation or knowledge of Refco.

Refco has filed a request with the Geneva courts seeking a provisional injunction challenging the action of the minority shareholders.  The provisional injunction is pending.

Refco intends to sell its ACM shares pursuant to an auction supervised by the United States Bankruptcy Court for the Southern District of New York.

Exhibit C

**Exhibit D**



Dear Sir,

**23rd November 2005:** We are surprised by Refco's reaction and their statement is incorrect. Our statement of yesterday says that we managed to re-gain majority control of ACM Advanced Currency Markets. In October an increase in share capital was voted by the board of directors of ACM which was appointed and approved by Refco and in compliance with Swiss Law. Refco did not participate in the share-capital increase and contrary to their allegations, the share capital increase is not an attempt, has been already approved and has been published in the registry of commerce of Geneva. Nowhere did we say in our original press release that we bought any shares from Refco.

More surprising still is their statement that they are seeking an injunction in a Swiss court. Given the circumstances and the fact that we have suffered from actions perpetrated by Refco, namely allegedly misleading investors and partners around the world (including ACM) with years of false financial statements and allegedly commiting massive securities fraud it seems preposterous that Refco believe they have a claim against us. On the contrary it seems more likely that we have a claim against Refco especialy since we are amongst the long list of creditors.

| | | |
|---|---|---|
| Main switchboard | +41 (22) 319 22 00 | Fax line +41 (22) 319 22 01 |
| Phone-dealing desk | +41 (22) 319 22 02 | dealingdesk@ac-markets.com 4) |
| Customer support | +41 (22) 319 22 03 | support@ac-markets.com |
| Institutional accounts | +41 (22) 319 22 07 | institutional@ac-markets.com |
| Business development | +41 (22) 319 22 04 | businessdev@ac-markets.com |
| Back-office | +41 (22) 319 22 09 | backoffice@ac-markets.com |
| Compliance | +41 (22) 319 22 05 | compliance@ac-markets.com |
| Webmaster | +41 (22) 317 87 02 | webmaster@ac-markets.com |
| Information technology | +41 (22) 319 22 00 | techsupport@ac-markets.com |

1)2)3)All ACM staff (except dealing desk staff) are at your disposal to reply from 09:00 - 19:00 CET only.
4)The telephone dealing desk is reserved for ACM customers only.

ACM is now the **2ND most visited online foreign exchange broker in the world**.

This e-mail is intended solely for the indicated recipient(s). It may contain privileged and/or confidential information. If you are not one of the intended recipients, please notify the sender immediately and destroy this e-mail; you must not copy, distribute or take any action in reliance on the information contained within. Whilst all efforts are made to safeguard inbound and outbound e-mails, ACM SA cannot guarantee that attachments are virus free or compatible with your software and declines any liability in respect to viruses or computer problems experienced. Any views expressed in this message are those of the individual sender, except where specifically stated to be the view of ACM SA, its subsidiaries or associates. Additionally ACM SA declines any liability connected with losses incurred on transactions based on any market information and/or opinions contained within this e-mail. This message has been checked for all known viruses by McAfee Virus scan.

Exhibit D

-----Original Message-----
**From:** Nicholas Bang [mailto:nick@ac-markets.com]
**Sent:** Wednesday, November 23, 2005 6:35 AM
**Subject:** PRESS RELEASE: ACM Refutes incorrect Refco statement

Dear Sir,

**23rd November 2005:** We are surprised by Refco's reaction and their statement is incorrect. Our statement of yesterday says that we managed to re-gain majority control of ACM Advanced Currency Markets. In October an increase in share capital was voted by the board of directors of ACM which was appointed and approved by Refco and in compliance with Swiss Law. Refco did not participate in the share-capital increase and contrary to their allegations, the share capital increase is not an attempt, has been already approved and has been published in the registry of commerce of Geneva. Nowhere did we say in our original press release that we bought any shares from Refco.

More surprising still is their statement that they are seeking an injunction in a Swiss court. Given the circumstances and the fact that we have suffered from actions perpetrated by Refco, namely allegedly misleading investors and partners around the world (including ACM) with years of false financial statements and allegedly commiting massive securities fraud it seems preposterous that Refco believe they have a claim against us. On the contrary it seems more likely that we have a claim against Refco especialy since we are amongst the long list of creditors.

| | | | |
|---|---|---|---|
| Main switchboard | +41 (22) 319 22 00 | Fax line +41 (22) 319 22 01 | |
| Phone-dealing desk | +41 (22) 319 22 02 | dealingdesk@ac-markets.com | 4) |
| Customer support | +41 (22) 319 22 03 | support@ac-markets.com | |
| Institutional accounts | +41 (22) 319 22 07 | institutional@ac-markets.com | |
| Business development | +41 (22) 319 22 04 | businessdev@ac-markets.com | |
| Back-office | +41 (22) 319 22 09 | backoffice@ac-markets.com | |
| Compliance | +41 (22) 319 22 05 | compliance@ac-markets.com | |
| Webmaster | +41 (22) 317 87 02 | webmaster@ac-markets.com | |
| Information technology | +41 (22) 319 22 00 | techsupport@ac-markets.com | |

1)2)3)All ACM staff (except dealing desk staff) are at your disposal to reply from 09:00 - 19:00 CET only.
4)The telephone dealing desk is reserved for ACM customers only.

ACM is now the **2ND most visited online foreign exchange broker in the world**.

This e-mail is intended solely for the indicated recipient(s). It may contain privileged and/or confidential information. If you are not one of the intended recipients, please notify the sender immediately and destroy this e-mail; you must not copy, distribute or take any action in reliance on the information contained within. Whilst all efforts are made to safeguard inbound and outbound e-mails, ACM SA cannot guarantee that attachments are virus free or compatible with your software and declines any liability in respect to viruses or computer problems experienced. Any views expressed in this message are those of the individual sender, except where specifically stated to be the view of ACM SA, its subsidiaries or associates. Additionally ACM SA declines any liability connected with losses incurred on transactions based on any market information and/or opinions contained within this e-mail. This message has been checked for all known viruses by McAfee Virus scan.

Exhibit D