SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe (JGM 0919)
Sally McDonald Henry (SMH 0839)


    - and -

300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
(213) 687-5000
Douglas B. Adler (DBA 6013)
Richard Levin
Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| REFCO INC., et al., | : | Case No. 05-60006 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| REFCO CAPITAL MARKETS, LTD., | : | |
| REFCO F/X ASSOCIATES, LLC, | : | |
| | : | Adv. Proc. No. 05-03224 (RDD) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ACM ADVANCED CURRENCY | : | |
| MARKETS S.A., LLOYD LA MARCA, | : | |
| ALEXANDER AXARLIS, BENOÎT | : | |
| SAUVAIN, AND NICHOLAS BANG, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**Debtors' Reply To Opposition Of Defendants To Requests**
**<u>By Refco For Requests For Preliminary Injunction</u>**

**Preliminary Statement**

Four basic, indisputable bankruptcy law principles govern this adversary proceeding and the Debtors' motion for a preliminary injunction, and set the context for decision. They are so basic to bankruptcy jurisprudence that they do not require extended discussion or citation to authority. They are set forth here only as a reminder of their particular importance and of their relevance to this case.

First, "[t]he automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (footnotes and internal citations omitted). It also protects this Court's "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1); see also Sinatra v. Gucci (In re Gucci), 309 B.R. 679, 682 (S.D.N.Y. 2004) (court's jurisdiction under section 1334(e) includes property, "wherever located," even outside the territorial jurisdiction of the United States); cf. Hong Kong and Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991 (9th Cir. 1998) (court enjoins foreign bank from pursuing debtor in a foreign country on discharged debt).

Second, actions taken in violation of the automatic stay are void. 48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir. 1987). An injunction, preliminary or otherwise, is not necessary to undo a void act. All that is required is the court's determination and declaration that the act violated the stay. Voidness follows. The purpose of a preliminary injunction in the

2

context of a stay violation is not to prevent action that otherwise would be permitted. It is to bring the force of a court order to bear to prevent what the statute already prohibits. As such, the ordinary requirements for a preliminary injunction do not apply:

> 'The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' 11 U.S.C. § 105(a). Accordingly, a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm.

In re L & S Indus., Inc., 989 F.2d 929, 932 (7th Cir. 1993); accord Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 975-77 (9th Cir. 2005) (section 105 injunction does not require showing of irreparable harm where action is to carry out the provisions of title 11).

Third, the bankruptcy court has exclusive jurisdiction to interpret and enforce the automatic stay. Contractors' State License Bd. v. Dunbar (In re Dunbar), 245 F.3d 1058, 1062 (9th Cir. 2001). Interpretation and enforcement of a provision so fundamental to the protection of the debtor, the estate, and the court's own jurisdiction may not be left to the determination of another court. Indeed, the bankruptcy court's exclusive jurisdiction prevents even another federal district court from making a binding determination of the effect of the stay arising from the bankruptcy case pending in the home court. Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.), 765 F.2d 343, 347-49 (2d Cir. 1985); Chao v. Hospital Staffing Servs., Inc.), 270 F.3d 374, 387 (6th Cir. 2001).

3

Finally, an entity that enters an appearance in a bankruptcy case is subject to the bankruptcy court's jurisdiction.  See 10 Alan N. Resnick & Henry R. Sommer, COLLIER ON BANKRUPTCY ¶ 7055.02 (15th ed. rev. 2005).  For example, participation in an adversary proceeding is adequate to overcome even so fundamental a jurisdictional bar as a State's constitutional assertion of sovereign immunity.  See e.g., Arizona v. Bliemeister (In re Bliemeister), 296 F.3d 858, 861-62 (9th Cir. 2002) (participation in adversary proceeding by filing briefs, then later asserting sovereign immunity jurisdictional bar).  Similarly, participation in the main case by filing a notice of appearance is consent to jurisdiction.

These four principles defeat the *Opposition of Defendants to Requests by Refco for Request for Preliminary Injunction* (Docket No. 18) (the "Opposition") filed in opposition to the *Debtors' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction* (Docket No. 3) (the "Motion").

On December 5, 2005, the Debtors filed a Verified Complaint (Docket No. 1) commencing this adversary proceeding to obtain (i) injunctive relief, (ii) declaratory relief, (iii) avoidance and recovery of postpetition transfers caused by Defendants, and (iv) damages, as well as sanctions, costs, expenses and attorney's fees, arising from Defendants' knowing and willful automatic stay violation.  On the same day, the Debtors filed the Motion for an order temporarily restraining and preliminary enjoining Defendant ACM Advanced Currency Markets S.A. ("ACM") and its directors, officers, employees, counsel, agents, and all other persons acting under, in concert with, or for it, from violating the automatic stay, interfering with the Debtors' reorganization efforts, and

engaging in similar misconduct pending an adjudication on the merits. This Court entered a Temporary Restraining Order (Docket No. 6) ("TRO") granting the initial relief requested in the Motion and scheduled a hearing to consider whether a Preliminary Injunction should be issued.

In their Opposition, Defendants do not argue they will likely succeed on the merits. They do not dispute any facts set forth in the Motion. Rather, they assert procedural grounds against the Motion. They argue that the Preliminary Injunction should be denied because (i) the Court should not exercise personal jurisdiction over ACM because the Debtors have filed a Swiss court action that also seeks injunctive relief, (ii) the Court does not have personal jurisdiction over the Individual Defendants,[1] (iii) the Individual Defendants have not been properly served, and (iv) the Debtors cannot demonstrate irreparable injury, a requirement for obtaining the Injunction because: (a) the Debtors can be compensated by money, and (b) the Swiss court has already entered an injunction.

Each of the objections is either irrelevant or without merit. Therefore, the Debtors respectfully request that the Court issue the Preliminary Injunction.

---

[1] "Individual Defendants" refers to Defendants Lloyd La Marca, Alexander Axarlis, Benoît Sauvain, and Nicholas Bang.

5

**Response to Objections**

A.   **This Court has Personal Jurisdiction Over ACM**

Because the Motion is directed only at ACM and those in privity with it, the only issue of personal jurisdiction relevant to the Motion is whether the Court has personal jurisdiction over ACM. As a preliminary matter, ACM, by its participation in this bankruptcy case, has waived any objection to this Court's exercise of personal jurisdiction. Furthermore, even if ACM had not waived this objection, it would be proper and reasonable for this Court to exercise personal jurisdiction over ACM.

1.   **ACM Has Waived Any Objection Based On Personal Jurisdiction**

The requirement of personal jurisdiction is a personal right that can be waived. Deak & Co. v. Soedjono (In re Deak & Co.), 63 B.R. 422, 429 (Bankr. S.D.N.Y. 1986). ACM interjected itself into this bankruptcy case before this adversary proceeding. ACM filed a notice of appearance (Docket No. 524) and an objection to a motion unrelated to this adversary proceeding (Docket No. 497). By appearing as a party in interest in these cases, ACM cannot now assert that its due process rights would be violated by having to appear before this Court. Therefore, ACM has consented to this Court's jurisdiction. See Deak & Co., 63 B.R. at 432; Nakash v. Zur (In re Nakash), 190 B.R. 763, 767-68 (Bankr. S.D.N.Y. 1996).

2.   **The Court Has Personal Jurisdiction Over ACM**

Even if ACM had not voluntarily submitted itself to jurisdiction, this Court could exercise personal jurisdiction over ACM. In resolving questions of personal jurisdiction over a foreign defendant, the court must determine whether the law comports with the

6

requirements of the Fifth Amendment's Due Process Clause. In re Paques, Inc., 277 B.R. 615, 628 (Bankr. E.D. Pa. 2000). The due process test for personal jurisdiction has two components: the "minimum contacts" and "reasonableness" requirements. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

The requirements for "minimum contacts" in an adversary proceeding are governed by the long-arm provisions of Federal Rule of Bankruptcy Procedure 7004(f). Under this Rule, the proper exercise of personal jurisdiction focuses on the "minimum contacts" with the United States, rather than with the forum state. Paques, 277 B.R. at 633. Notably, ACM does not dispute here that it has the requisite minimum contacts with the United States.

Instead, ACM focuses on whether the exercise of jurisdiction would be reasonable, i.e., that the maintenance of the action would not offend "traditional notions of fair play and substantial justice." Because ACM has sufficient minimum contacts with the United States to establish personal jurisdiction, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Paques, 277 B.R. at 637 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

ACM cannot show that this Court's exercise of personal jurisdiction over it is unreasonable. As the Opposition sets forth, this Court must evaluate the following factors as part of the "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of the

controversy; and (5) the shared interest of the states in furthering substantive social policies. Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113-14 (1987).

Here, the Asahi factors clearly support this Court's exercise of personal jurisdiction over ACM to enforce the automatic stay. First, having retained New York counsel and voluntarily submitted to this Court's jurisdiction through, among other things, filing of a notice of appearance and filing pleadings unrelated to this adversary proceeding, ACM cannot establish that it is burdened by the continuation of this action before this Court. Second, as Defendants have admitted, the Bankruptcy Court clearly has an interest in enforcing the automatic stay to protect property under its exclusive jurisdiction. And Defendants knew that their actions would adversely affect the bankruptcy estates administered here in the United States. See Lykes Bros. S.S. Co. v. Hanseatic Marine Serv., GmBH (In re Lykes Bros. S.S. Co.), 207 B.R. 282, 287-88 (Bankr. M.D. Fla. 1997) (holding that exercise of personal jurisdiction did not violate traditional notions of fair play and substantial justice where stay violation outside United States had foreseeable effect within United States). As to the remaining factors, ACM is wrong in asserting that the Swiss court proceeding will (i) "adequately protect" the Debtor's interest, (ii) provide a forum for "convenient and effective relief," (iii) result in the "efficient administration of justice," or (iv) promote "substantial social policies."

Although based on most of the same underlying facts, the Swiss court action and this adversary proceeding are not based on the same underlying legal theories and are separate and distinct actions. The Swiss court action relates solely to whether the purported capital increase complied with Swiss law. By contrast, this action relates

8

solely to whether Defendants violated the automatic stay and to the appropriate remedy, not to matters of Swiss corporate law. The Debtors do not ask the Swiss court to determine whether the Defendants violated the Bankruptcy Code's automatic stay, a matter over which this Court has final authority. Accordingly, ACM has not and cannot show that the Court's exercise of jurisdiction over ACM is unreasonable.

Even if ACM could raise an issue relating to unreasonableness, that issue would go to the ultimate issue of personal jurisdiction over the Defendants in the adversary proceeding at trial or upon a dispositive motion. The Motion involves only a preliminary injunction to enforce the automatic stay, which cannot await final resolution of the larger personal jurisdiction dispute. See Weitzman v. Stein, 897 F.2d 653, 659 (2d Cir. 1990) (holding that court may enter preliminary injunction upon reasonable probability of success on question of personal jurisdiction). Otherwise, an automatic stay defendant could complete its stay violation before the court could issue an order that would bind it. For the same reason (discussed below) that complete, formal service of process is not required before issuance of a binding preliminary injunction, an assertion of unreasonableness does not prevent issuance of the preliminary injunction to protect the estate and this Court's jurisdiction.

B.     **The Court Does Not Need to Exercise Personal Jurisdiction
       Over the Individual Defendants to Issue the Preliminary Injunction**

Defendants argue that the Motion should be denied because the Court does not have personal jurisdiction over the Individual Defendants. Although the Debtors dispute

9

this argument,[2] the Court does not need to exercise personal jurisdiction over the Individual Defendants to issue the Preliminary Injunction. The Debtors seek to enjoin Defendant ACM and its directors, officers, employees, counsel, agents, and all other persons acting under, in concert with, or for it. Rule 65(d) of the Federal Rules of Civil Procedure, which provides that an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise," expressly authorizes such relief. Thus, the Court has the power to enjoin a non-party individual over whom it has not exercised personal jurisdiction if the non-party is in privity with the enjoined party, such as by being an officer, director or shareholder. See Waffenschmidt v. MacKay, 763 F.2d 711, 714 (5th Cir. 1985) (non-parties who reside outside court's territorial jurisdiction may be subject to court's jurisdiction if, with actual notice of court order, they actively aid and abet party in violating order, even if non-party has no other forum contacts); Wright & Miller, 11A FED. PRAC. & PROC. 2D § 2956 (2005). Because the Debtors do not seek to enjoin the Individual Defendants other than in their designated corporate capacities, the Preliminary Injunction is proper, as long as the Court has probable jurisdiction over ACM.

---

[2] The Debtors have pled sufficient facts to establish a prima facie basis for personal jurisdiction over the Individual Defendants. At the appropriate time, the burden will be on the Individual Defendants to show, through affirmative proof, that the exercise of personal jurisdiction is unreasonable. Wright & Miller, 4 FED. PRAC. & PROC. §1067.6 (2005).

C.  **Completion of Service of Process is Not Required
    Before the Court Issues a Preliminary Injunction**

Since the Motion is directed at ACM and since ACM does not dispute that it has been properly served, service of process is complete. Yet even if the Motion were directed at the Individual Defendants (other than in their capacity as persons in privity with ACM), completion of service of process is not required before the court may issue a preliminary injunction.

Temporary restraining orders and preliminary injunctions are by their nature provisional remedies that may be granted to preserve the status quo before service of process is complete. Rule 65(a) does not require service of process; it requires only that "notice" be given to the adverse party. Corrigan Dispatch Co. v. Casa Guyman, S.A., 569 F.2d 300, 302 (5th Cir. 1978) (permitting court to issue preliminary injunction before appellant was made party by substitute service). What constitutes sufficient and adequate notice is a matter for the Court's discretion. Id. "Although Rule 65(a)(1) does not define what constitutes proper notice, it has been held that providing a copy of the motion and a specification of the time and place of the hearing are adequate." Wright & Miller, 11A FED. PRAC. & PROC. 2D § 2949 (2005). Here, by the parties' own admission, they have received actual notice of the Motion. Nothing more is required at this stage.[3]

---

[3]  As set forth in the Declaration of Shelby R. Du Pasquier filed in support hereof, the pleadings in this case have, as required to effect service in Switzerland under the Hague Convention, been deposited at the Geneva "Parquet du procureur général" (office of the attorney-general). The Defendants have been invited to retrieve those papers but do not have a duty to do so. If the documents are not retrieved by January 31, 2006, they will be remitted to a police officer and served in person by the officer. Therefore, the Debtors have done all things necessary to initial service under the Hague Convention,
*(cont'd)*

11

D.   **Defendants' Argument that the Debtors Have Not
Demonstrated Irreparably Injury Is Without Merit**

Defendants' only objection that addresses the substantive issue of whether this Court may grant a preliminary injunction under Rule 65 is their claim that the Debtors cannot demonstrate irreparable injury. A movant, however, need not demonstrate irreparable injury where the preliminary injunction is to enforce the automatic stay. Furthermore, the Debtors have shown irreparable injury by the Defendants' attempt to usurp the Debtors' controlling equity position and otherwise vitiate the Debtors' corporate governance rights.

1.   **A Showing of Irreparable Injury Is Not Required
for an Order Enforcing the Automatic Stay**

As set forth in the Motion, the usual requirement that a movant show irreparable injury to obtain a preliminary injunction does not apply where a debtor seeks a determination that defendants have violated the automatic stay where the action to be enjoined is one that threatens the reorganization process or which would impair the court's jurisdiction with respect to a case before it. LTV Steel Co. v. Board of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 29 (S.D.N.Y. 1988); AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990). Thus, a bankruptcy court may issue injunctive relief where there is a showing that the action sought to be enjoined would embarrass, burden, delay or otherwise impede the

---

*(cont'd from previous page)*
and any additional time required to complete service is a result of the Defendants' choice not to retrieve the pleadings.

reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate and reorganization prospects. Chateaugay Corp., 93 B.R. at 31.

Section 105(a) specifically authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title [11]." It does not limit the court to carrying out the Bankruptcy Code's provisions only upon a showing of irreparable harm; the Bankruptcy Code's provisions and protections apply without any such showing. See Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963 (9th Cir. 2005); In re L & S Indus., Inc., 989 F.2d 929, 932 (7th Cir. 1993). Here, the Debtors seek the order to enforce and prevent further stay violations. Therefore, the Debtors are entitled to the relief without showing irreparable injury.

The Defendants wrongly claim that this case law is "the minority case law and does not reflect the current state of the law." (Opp'n at 15.) To the contrary, it remains good law. Conversely, each of the cases Defendants cite addresses the standard to be applied to determine whether the court should enjoin actions against third parties. See, e.g., In re United Health Care Org., 210 B.R. 228, 233 (S.D.N.Y. 1997) (adopting traditional preliminary injunction standard when using § 105 to extend § 362 stay to non-debtors). Those cases do not address a court's inherent authority under Sections 362 and 105 to enforce the automatic stay to protect estate property under its exclusive jurisdiction.

2.  **The Debtors Have Nevertheless Shown Irreparable Injury**

Although the Debtors need not show irreparable injury, the Debtors' estates in fact will suffer irreparable injury absent immediate injunctive relief from this Court. As

13

set forth in the Motion, there are at least two forms of injury caused by Defendants' stay violations. First, ACM's issuance of the Additional Shares divests the Debtors of their control position of ACM. Second, the purported capital increase, if allowed to stand, reduces the value of the estates' existing shares, as the newly issued shares will be transferred for price significantly less than their fair market value.

Defendants assert that these injuries are not irreparable because "(a) damages allegedly resulting from the Capital Increase and dilution of Refco's interest in ACM, to the extent it can be proven, can be compensated by money; and (b) Refco initially sought and received the identical injunction it seeks here [from] the Swiss court."

*(a) Interference with Corporate Governance
Rights Constitutes Irreparable Injury*

Interference with corporate governance rights constitutes irreparable injury. For example, "the denial of a controlling ownership interest in a corporation," as well as "conduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company" each may constitute irreparable harm. Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 114-15 (2d Cir. 2003). Other courts have similarly found irreparable injury in the dilution of a party's stake in, or a party's loss of control of a business. See e.g. Street v. Vitti, 685 F. Supp. 379, 384 (S.D.N.Y. 1988) (finding irreparable harm where forced sale of plaintiffs' shares would "destroy their voice in management"); Rebell v. Muscat, 26 A.D.2d 685, 272 N.Y.S.2d 478, 480 (1966) ("undeniable probability of irreparable harm" where plaintiffs' shares would be diluted). Here, the Defendants' actions would not only dilute the Debtors' interests but would

14

divest the Debtors of a controlling interest in ACM.  This interference with the Debtors' controlling stake in ACM and the Debtors' corresponding corporate governance rights constitutes irreparable injury.

(b)   *The Swiss Proceeding Will Not Protect the
       Debtors' Estates From Irreparable Injury*

Defendants' assertion that the Debtors will not be irreparably harmed because of the existence of the Swiss court injunction is also without merit.  As set forth above, the Swiss court action relates solely to whether the purported capital increase complied with Swiss law, while this Court is being asked to rule on and remedy an automatic stay violation.  Accordingly, the basis for the relief the Debtors seek from the two courts is separate and distinct, not "identical."  The Swiss court could find that Swiss law was not violated and, therefore, the Swiss injunction could be lifted at any time on these grounds.  Such a ruling would have no bearing on whether Defendants violated the automatic stay and whether a continuing injunction is proper on this separate basis.

Indeed, transactions that incurred after this Court issued the TRO show the need for the separate stay.  The Swiss court had dissolved its previous preliminary injunction by order of December 9, 2005, which became effective on December 14, 2005.  ACM then issued new shares in accordance with the capital increase purportedly authorized on November 15, 2005, in violation of this Court's TRO.  The Defendants obliquely admit as much in their Opposition and advise that they are now "in the process" of remedying the TRO violation.  Although the Swiss court reimposed its own preliminary injunction,

15

without this Court's TRO, the Debtors' interest in ACM would have been irreparably injured during the short gap in the Swiss injunction.

## Conclusion

For all of the foregoing reasons, this Court should grant the Motion and preliminarily enjoin Defendant ACM and its and its directors, officers, employees, counsel, agents, and all other persons acting under, in concert with, or for it to the extent requested.

Dated:  January 30, 2006

                        SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                        By:  /s/ Sally McDonald Henry
                        J. Gregory Milmoe (JGM 0919)
                        Sally McDonald Henry (SMH 0839)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                            - and -

                        Douglas B. Adler (DA 6013)
                        Richard Levin
                        300 South Grand Avenue
                        Suite 3400
                        Los Angeles, California  90071
                        (213) 687-5000

                        Attorneys for the Debtors and
                          Debtors in Possession