**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                                  :
In re                                                             :   Chapter 11
                                                                  :
REFCO INC., et al.                                                :   Case No. 05-60006
                    Debtors.                                      :
------------------------------------------------------------------x
MASONIC HALL & ASYLUM FUND,                                       :
MASONIC MEDICAL RESEARCH                                          :
LABARATORY, MERRILL LYNCH                                         :
INTERNATIONAL, SPHINX ACCESS LLC                                  :
SPHINX ACCESS LTD., RAYMOND JAMES                                 :   06 Civ. 5435 (RMB)
FINANCIAL SERVICES, SPHINX MANAGED                                :   06 Civ. 5596 (RMB)
FUTURES INDEX FUND, LP, CAISSE                                    :   06 Civ. 5597 (RMB)
DE DEPOT ET PLACEMENT DU QUEBEC                                   :   06 Civ. 5598 (RMB)
FRIEDBERG GLOBAL MACRO HEDGE FUND                                 :   06 Civ. 5634 (RMB)
LTD., FRIEDBERG GLOBAL MACRO HEDGE                                :   06 Civ. 5635 (RMB)
FUND AND ROZEL INVESTMENTS LTD.,                                  :   06 Civ. 5662 (RMB)
OFI PALMERES                                                      :   06 Civ. 5663 (RMB)
                                                                  :   06 Civ. 5730 (RMB)
                    Appellants,                                   :   06 Civ. 5731 (RMB)
                                                                  :   06 Civ. 5758 (RMB)
         - against -                                              :   06 Civ. 5959 (RMB)
                                                                  :   06 Civ. 5976 (RMB)
OFFICIAL COMMITTEE OF UNSECURED,                                  :
CREDITORS OF REFCO INC., ET AL.                                   :
REFCO CAPITAL MARKETS, LTD.,                                      :   **DECISION AND ORDER**
REFCO ALTERNATIVE INVESTMENTS,                                    :
LLC., and SPHINX MANAGED FUTURES                                  :
FUND SPC,                                                         :
                                                                  :
                    Appellees.                                    :
------------------------------------------------------------------x

**I.     Background**

On or about July 26, 2006, Masonic Hall & Asylum Fund, Masonic Medical Research

Laboratory, Sphinx Managed Futures Index Fund, L.P., Merrill Lynch International, Sphinx

Access LLC, Sphinx Access, Ltd., Raymond James & Associates, Raymond James Financial

Services, Caisse De Depot Et Placement Du Quebec, Ofi Palmares, Friedberg Global Macro

Hedge Fund Ltd., Friedberg Global Macro Hedge Fund, and Rozel Investments Ltd.

("Appellants") appealed, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. Pro.") 8001, from a series of final orders issued in June 2006 by the Honorable Robert D. Drain, United States Bankruptcy Judge, Southern District of New York (the "Bankruptcy Court") settling an adversary proceeding (the "Adversary Proceeding") between the Official Committee of Unsecured Creditors of Refco (the "Committee") and Sphinx Managed Futures Fund SPC ("SMFF") including: (1) the Stipulation and Order of Settlement, entered June 9, 2006 ("Stipulation and Order of Settlement"), and the Order Clarifying Stipulation and Order of Settlement and Resolving Certain Objections, entered June 9, 2006 ("Clarifying Order"); (2) the Order Granting Motion by Sphinx Managed Futures Fund SPC to Quash Subpoenas and Deposition Notices Issued on Behalf of Objecting Investors and Denying the Objecting Investor's Motion to Compel Compliance With Same Subpoenas and Deposition Notices, entered on June 13, 2006 (June 13 Motion to Quash Order"); and (3) the Order Under Fed. R. Civ. P. 45(e) and Fed. R. Bankr. P. 9016 Granting Motion to Quash Subpoenas, entered on June 9, 2006 ("June 9 Motion to Quash Order").[1]

At the heart of this appeal is the Bankruptcy Court's approval, on June 8, 2006, of the Stipulation and Order of Settlement between the Committee and SMFF resolving the Committee's efforts to recover approximately $312,046,266.23 that SMFF had withdrawn from RCM five days before Refco's bankruptcy filing (the "Settlement").[2]  (See Stipulation and Order of Settlement; Complaint ¶ 1, 17.)  As part of the Settlement, SMFF agreed to repay $263 million to RCM and to waive any claim against RCM related to the transfer.  (See Motion For

---

[1]   Refco, Inc. ("Refco") and several related entities, including Refco Capital Markets ("RCM," together with Refco the "Debtors"), had filed for bankruptcy under Chapter 11 of the Bankruptcy Code on October 17, 2005.  (See Complaint to Avoid and Recover Transfers, dated December 15, 2005 ("Complaint"), attached to Joint Appendix of Appellants ("Appendix") at Exhibit A, at ¶ 1.)

[2]   The Settlement was approved by the Bankruptcy Court on June 8, 2006, and the Stipulation and Order of Settlement was signed by the Bankruptcy Court on June 9, 2006.

2

Approval of Settlement, dated April 26, 2006 ("Motion for Approval"), attached to Supplemental Appendix of Appellees as Exhibit 9 (Supp. App."), at ¶ 9.)

**Appellants' Objections in the Bankruptcy Court**

On or about May 17, 2006, Appellants, who are investors in SMFF, filed objections to the (proposed) Settlement in the Bankruptcy Court arguing that SMFF "simply threw the fight in order to protect its own insiders, and others, from scrutiny and legal exposure." (See, e.g., Opposition of Merrill Lynch, Raymond James and Rydex to Motion For Approval of Proposed Settlement and Compromise, dated May 17, 2006 ("Merrill Lynch Opposition"), attached to Appendix as Exhibit 11, at 3.) Appellants contended that PlusFunds Group, Inc. ("PlusFunds"), SMFF's investment advisor, had an "incestuous relationship" with Refco and colluded with Refco and SMFF in agreeing to the "worse-than-losing" Settlement. (See, e.g., Merrill Lynch Opposition at 2.) Appellants also argued that they had standing to object to the Settlement as "parties in interest" and requested that the Bankruptcy Court allow them to intervene in the Adversary Proceedings for the purpose of opposing the Settlement.[3] (See, e.g., Merrill Lynch Opposition at 3.)

---

3   After filing their objections in the Bankruptcy Court, Appellants were provided with copies of documents collected and depositions taken during the Adversary Proceeding. (See Emergency Motion of Merrill Lynch, Raymond James and Rydex to Compel Compliance, dated May 30, 2006, at 4.) On May 19, 2006 and May 22, 2006, Appellants served subpoenas on, among others, the Committee, SMFF, Refco Alternative Investments, LLC ("RAI"), an affiliate of Refco, and RAI's principle, Richard Butt, requesting information related to the Settlement. (See Motion by SMFF to Quash Subpoenas Issued by Certain Investors In Connection With Their Opposition, dated May 25, 2006 ("SMFF Motion to Quash"), at ¶¶ 4-5.) On May 25, 2006, SMFF moved to quash Appellants' subpoenas, (see SMFF Motion To Quash ¶ 1), and, on May 26, 2006, RAI and Butt likewise moved to quash the subpoenas. (See Notice of Hearing on Motion to Quash Subpoenas, dated May 30, 2006, attached to Appendix as Exhibit 15 ("RAI Motion to Quash"), at 1.) On or about May 30, 2006, in response to the motions to quash, several of the Appellants brought an emergency motion to compel discovery of Settlement-related material. (See Emergency Motion of Merrill Lynch, Raymond James and Rydex to Compel Compliance ("Emergency Motion to Compel"), dated May 30, 2006.)

3

**Liquidation Proceedings in the Cayman Islands**

Also, while the Settlement was pending, on June 1, 2006 and June 5, 2006, involuntary "winding-up" or liquidation proceedings were commenced in the Grand Court of the Cayman Islands against SMFF and a related entity, Sphinx Strategy Fund, Ltd ("Strategy"). (See Appendix 17-18.) The Grand Court of the Cayman Islands appointed a Liquidator for these entities on June 5, 2006, and, on June 7, 2006, that court issued an ex-parte order to "stay …all actions, suits, or proceedings against [SMFF] until the hearing of the Petition for winding up." (Order From The Grand Court of the Cayman Islands, dated June 7, 2006, attached to Appendix as Exhibit 18 ("Cayman Islands Order"), at ¶1.) On June 27, 2006, the involuntary liquidation proceedings were dismissed by the Grand Court of the Cayman Islands. (See Supp. App. 12 at 1.) Voluntary bankruptcy proceedings involving SMFF were subsequently commenced in the Grand Court of the Cayman Islands in July and August 2006. (See Liquidators' Brief at 3.)

**The Bankruptcy Court Rulings**

On June 8, 2006, the Bankruptcy Court heard oral argument on Appellants' objections. (See Transcript of Proceedings Before Hon. Robert D Drain, dated June 8, 2006 ("June 8, 2006 Bankruptcy Court Transcript"), at 1-76.) Before reaching the merits of the Settlement, Judge Drain denied Appellants' request to stay the hearing in light of the Cayman Islands Order. (See June 8, 2006 Bankruptcy Court Transcript at 31 ("I do not believe that a motion by the creditors committee here for approval of its entry into the settlement agreement is in any way 'against' either Strategy Funds or SPC. That is because the issues that I am to determine in this motion go to the effect of the settlement on the debtors before me and their creditors. I believe the law is crystal clear on that point.").)

After hearing from counsel, Judge Drain approved the Settlement, finding, among other things, that "based on my review of the motion and my understanding of the issues, which is

4

fairly extensive since this matter had been raised in litigation before me and was on a fast track to being tried, I agree with the Creditors' Committees, and subsequently the debtors' and the trustees' decision to enter the compromise and, therefore, will authorize it." (June 8, 2006 Bankruptcy Court Transcript at 74 ("[I]n its proper context, which is a motion for approval of the Refco debtors' actions … under Bankruptcy Code sections 363(b) and 105 and Bankruptcy Rule 9019, my inquiry is limited to the factors that I previously outlined. And the debtors have clearly satisfied each of those factors, so I will approve the settlement.").) As to the Appellants' objections, Judge Drain explained that "the objectors … all object on the basis that they believe that the entities in which they hold interests … have improvidently or improperly entered into it …. I believe that those objectors do not have standing to be heard on those objections … because … they were not directly affected by this settlement, but are affected only through their ownership or debtor/creditor interests in the nondebtor settling parties. Consequently, I should not – in fact, I may not – review the fairness of the settlement as to them." (June 8, 2006 Bankruptcy Court Transcript at 74.)

On June 9, 2006, Judge Drain, as noted, entered the Stipulation and Order of Settlement and issued a written ruling granting the RAI Motion to Quash. (See Order of the Bankruptcy Court, dated June 9, 2006, attached to Appendix as Exhibit 23 ("June 9, 2006 Discovery Order"), at 1-2 ("The Subpoenas issued pursuant to Federal Rules 26 and 30, made applicable by Bankruptcy Rule 7030, to RAI and Mr. Butt, requesting production of documents and the deposition of Mr. Butt … are hereby quashed.").) On June 13, 2006, Judge Drain issued a written ruling granting the SMFF Motion to Quash and denying Appellants' Emergency Motion to Compel. (See Order of the Bankruptcy Court, dated June 13, 2006 attached to Appendix as Exhibit 24 ("June 13, 2006 Discovery Order"), at 1-2 ("the Court has determined … that (i) the Subpoenas call for information irrelevant to the issues for the Court on the Approval Motion; (ii)

5

compliance with the Subpoenas would be unduly burdensome; and (iii) the Objecting Investors lack standing to object to the Approval Motion, and therefore lack standing to take discovery in connection therewith.").)

**The Instant Appeal**

Appellants argue here that (1) Appellants' "interest is adequately direct, adverse, and pecuniary to establish appellate standing" (Appellants' Joint Reply Brief, dated September 20, 2006 ("Reply Brief") at 4); (2) SMFF investors had standing before the Bankruptcy Court, were "parties in interest" under Bankruptcy Code § 1109(b), and "were entitled to intervene" in the Bankruptcy Court proceedings (Joint Brief of Appellants, dated August 18, 2006 ("Appellants' Brief"), at 18-22); (3) "case law, in the bankruptcy and analogous contexts, makes clear that the scope of judicial review of settlements is more than ample to encompass consideration of the rights of affected third parties" and that the Bankruptcy Court erred when it "held that it was bound by law to approve a proposed settlement between [SMFF] and the [Committee] even if, as [Appellants] alleged, that settlement was ultra vires and the product of fraud, bad faith, a lack of arms' length negotiations, and a breach of fiduciary duty by [SMFF]'s directors" (Appellants' Brief at 2, 15); and (4) the "Bankruptcy Court abused its discretion in failing to accord comity to acts of the Cayman Island Grand Court" when the Bankruptcy Court refused to stay its decision on the Settlement. (Appellants' Brief at 2.) Appellees respond that (1) "Appellants do not have standing to appeal directly from the [Stipulation and Order of Settlement] because they are not 'persons aggrieved' whose pecuniary interests are directly affected by the Bankruptcy Court's Order" (Appellees' Brief at 2); (2) "parties who are merely interested in the outcome do not have standing to be heard with respect to matters coming before a bankruptcy court" and Appellants' request to intervene in the Bankruptcy Court proceedings was untimely (Appellees' Brief at 3); (3) "bankruptcy courts only take into account the rights of third parties with respect to approval

6

of a settlement … if such party's rights are directly affected by the settlement" (Appellees' Brief at 3); and (4) "the Cayman Orders … did not require the Bankruptcy Court to stay the hearing at issue." (Appellees' Brief at 2.)[4]

The Court held oral argument on September 21, 2006. (See Transcript, dated September 21, 2006.)

**For the reasons set forth below, the Court affirms the decisions of the Bankruptcy Court.**

## II.   Legal Standard

"A district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts." In re Iridium Operating LLC, No. 01 Civ. 5429, 2005 WL 756900, *4 (S.D.N.Y. April 4, 2005); see 28 U.S.C. § 158(a). A bankruptcy court's approval of a settlement is reviewed "extremely deferentially." Liu v. Silverman, 166 F.3d 1200, 1200 (2d Cir.1998); In re Iridium, 2005 WL 756900, *4 ("A reviewing court should not overturn a bankruptcy court's order approving a settlement unless the order is manifestly erroneous and a clear abuse of discretion."). A "bankruptcy court is ordinarily in the best position, as the … ongoing supervisory court for the bankruptcy proceeding, to determine whether a compromise is in the best interest of the estate and [is] 'fair and equitable.'" In re Purified Down Prods. Corp., 150 B.R. 519, 522 (S.D.N.Y.1993).

## III.   Analysis

### (1)   Standing

Appellants argue that "the settlement order improperly denied [Appellants] their right to be heard in connection with approval of a settlement, which was the final and necessary step in a

---

[4]   The Liquidators for SMFF in a separate Cayman Islands bankruptcy proceeding "report that they are not in a position … to join in any brief filed by the other Appellees" and "reserve all rights and remedies at law and in equity which may be available to the Liquidators." (Liquidators' Brief, dated September 11, 2006, at 1.)

7

collusive scheme to defraud [Appellants] of tens of millions of dollars" and that this "interest is adequately direct, adverse, and pecuniary to establish appellate standing." (Appellants' Reply Brief at 4.) Appellees respond that "any harm claimed by Appellants as a result of the [SMFF] Settlement is, at best, tangential and indirect – the loss of value of the shares they hold in SMFF. Such indirect, remote, and attenuated harm cannot be rammed through the narrow gates of bankruptcy appellate standing." (Appellees' Brief at 14.)

The Second Circuit has "held that an 'aggrieved person' is one who is directly and adversely affected pecuniarily by the challenged ruling of the bankruptcy court." In re Colony Hill Associates, 111 F.3d 269, 273 (2d Cir. 1997) (internal citations omitted); see Hickox v. Friedland, No. 98 CIV. 4988, 1999 WL 970454, *5 (S.D.N.Y. 1999). "This standard reflects the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." Colony Hill, 111 F.3d at 273 (internal citations omitted); In re Gucci, 126 F.3d 380, 388 (2d Cir. 1998) ("The stringency of our rule is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters.").

Appellants are not directly and adversely affected pecuniarily by the challenged ruling of the Bankruptcy Court because they do not hold a direct interest in the Debtor. See Colony Hill, 111 F.3d at 273; see also In re Dein Host, Inc., 835 F.2d 402, 405-406 (1st Cir. 1987) ("the fact that the injury may indirectly harm a stockholder by diminishing the value of his corporate shares does not bestow upon him a right to sue on his own behalf."); In re Interpictures, Inc., 86 B.R. 24, 28 (Bankr. E.D.N.Y. 1988) ("Our Circuit Court of Appeals and district courts within this Circuit have uniformly held that where a corporation is wronged by the acts of others, it is the corporation, not the individual shareholders, who possesses the cause of action. This is so

8

even though shareholders may allege that the value of their stock has been impaired by injury to the corporate assets.") (internal citations omitted).

Appellants, therefore, do not have standing to appeal the Settlement. See Colony Hill, 111 F.3d at 273.

### (2)     Appellants Did Not Have Standing Before The Bankruptcy Court

Relatedly, the Bankruptcy Court properly determined that Appellants were not "parties in interest" in the Adversary Proceeding and properly declined to consider objections to the proposed Settlement from Appellants who were neither the Debtor nor the Debtor's creditors.

Appellants argue that "the term 'party in interest' … must be read broadly and flexibly to provide notice [of] an opportunity to be heard [in the Bankruptcy Proceeding below] to anyone with a sufficient stake in the proceedings" and that "even if [they] lacked a right to be heard as a matter of … standing … they were entitled to intervene." (Appellants' Brief at 20, 24.) Appellees respond that "the Bankruptcy Court did not abuse its discretion in concluding that the Appellants lacked standing to object to the terms of or obtain discovery with respect to the … Settlement" because "the Bankruptcy Court properly held that the Appellants were not 'parties in interest.'" (Appellees' Brief at 16.) Appellees also argue that the Bankruptcy Court "properly rejected Appellants' eleventh-hour request to intervene in the Adversary Proceeding" because the request "was not timely under any measure of timeliness and would be extremely prejudicial to the Debtors, their creditors, and to SMFF." (Appellees' Brief at 25.)

Section 1109 of the Bankruptcy Code provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

"The term party in interest is broadly interpreted, but not infinitely expansive." In re Martin

9

Paint Stores, 207 B.R. 57, 61 (S.D.N.Y. 1997); see In re Ionosphere Clubs, Inc., 101 B.R. 844, 850 (S.D.N.Y. 1989) ("[I]t is important that a bankruptcy court is not too facile in granting applications for standing. Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization."). A party must be a creditor or debtor to have standing to object. See In re Comcoach Corp., 698 F.2d 571, 573 (2d Cir. 1983) ("Bankruptcy courts were established to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute. Necessarily, therefore, the [objector] must be either a creditor or a debtor to invoke the court's jurisdiction."); Martin Paint Stores, 207 B.R. at 61 ("In Comcoach, the Court of Appeals for the Second Circuit held that the term party in interest … includes only the debtor and its creditors.").

The Bankruptcy Court properly declined to consider Appellants' objections because creditors of a debtor, not a "creditor of a debtor's creditor," could properly raise objections to the Settlement. (See Bankruptcy Court Transcript at 52 ("The objectors are, instead, interest holders in and, perhaps, creditors of the non-debtor parties to the settlement. The law is clear, particularly in the Second Circuit, that parties' standing in such a position do not have standing to argue their obligor's or their corporation's rights in a bankruptcy case; rather, it is up to their obligor or the entity in which they hold interests to pursue those rights.")); Comcoach, 698 F.2d at 573; Martin Paint Stores, 207 B.R. at 61-62 ("Appellant's stature with respect to the instant assumption and assignment is analogous to that of the creditor of a debtor's creditor … [Appellant] is not a party to and has no rights arising under or in connection with the Lease, and therefore lacks standing to object to the assumption and assignment of the Lease.").

Appellants' request to intervene in the Bankruptcy Court was (also) properly rejected because, among other reasons, Appellants were aware of the Adversary Proceeding for

10

approximately five months but failed to request intervention until after the Settlement was announced and, by allowing Appellants to intervene at such a late stage, the Bankruptcy Court would have caused undue delay.  See In re Iridium Operating, LLC, 329 B.R. 403, 405 (S.D.N.Y. 2005) ("[T]he Bankruptcy Court did not abuse its discretion in determining that Iridium's motion to intervene was untimely.  Judge Blackshear weighed appropriately the relevant considerations of the status of the proceeding in relation to the timing of the application, as well as prejudice to preexisting parties.").

Similarly, the Bankruptcy Court did not abuse its discretion in denying Appellants discovery related to the Settlement.  (See June 13, 2006 Discovery Order at 2 ("the Objecting Investors lack standing to object to the Approval Motion, and therefore lack standing to take discovery in connection therewith.")); In re DG Acquisition Corp., 151 F.3d 75, 79 (2d Cir. 1998) ("[a] trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion.").

### (3)     Appellants' Objections in Bankruptcy Court

Appellants contend that "far from being limited to considering the fairness of a settlement to one party, the [Bankruptcy Court] must consider the effect of the settlement on all entities affected thereby." (Appellants' Brief at 18.)  Appellants also contend that "review of the lower court's ruling as to the scope of its power and the legal standard by which to gauge the proposed settlement and Investors' right to be heard and conduct discovery is de novo." (Appellants' Brief at 3.)[5]

Appellees respond that "the Appellants had – as the Bankruptcy Court properly held – no basis cognizable under Bankruptcy Rule 9019 for objection to the SPhinX Settlement," because, among other things, "the Bankruptcy Court properly concluded that the propriety of the …

---

[5]    The Liquidators for SMFF argue, in conclusory terms, that "there are facts which give the Liquidators serious concerns about the Settlement …." (Liquidator's Brief at 8.)

11

Settlement as to SMFF was irrelevant to its determination whether to approve it under Bankruptcy Rule 9019." (Appellants' Brief at 23.) Appellees also argue that "notwithstanding the Appellants' request for a de novo standard, it is well established that a bankruptcy court's decision approving a settlement pursuant to Bankruptcy Rule 9019 is subject to an abuse of discretion standard." (Appellees' Brief at 5.)

"The approval of a settlement in a bankruptcy proceeding … may not be set aside except upon a showing of plain error or abuse of discretion." In re Teltronics Services, Inc., 762 F.2d 185, 189 (2d Cir. 1985); see Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("My review of the bankruptcy court's approval of the extant settlement agreement is restricted to determining whether there was a clear abuse of discretion. The experience and knowledge of the bankruptcy court judge is of significance in assessing the propriety of the settlement. I am also cognizant of the general rule that settlements are favored ….").

"In undertaking an examination of the settlement … [the] responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); see Nellis, 165 B.R. at 121 ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it."). Courts in this Circuit have set forth various factors to be considered on a Rule 9019 motion: "(1) the probability of success in the litigation; (2) the difficulties associated with collection; (3) the complexity of the litigation, and the attendant expense, inconvenience, and delay; and (4) the paramount interests of the creditors." In re Prudential Lines, Inc., 170 B.R. 222, 246-47 (S.D.N.Y.1994); In re Ionosphere Clubs, Inc., 156 B.R. 414 (S.D.N.Y.), aff'd, 17 F.3d 600 (2d Cir.1994); see In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir.1992), cert.

dismissed, 506 U.S. 1088 (1993).

The Bankruptcy Court's approval of the Settlement was not manifestly erroneous or a clear abuse of discretion. See In re Iridium, 2005 WL 756900, *4; Nellis, 165 B.R. at 121; see also TMT Trailer Ferry, 390 U.S. at 414. For one thing, the Bankruptcy Court properly recounted the (above) factors relating to propriety of a settlement and found that "the debtors have clearly satisfied each of those factors." (See Transcript of Bankruptcy Proceeding at 76.) And, there is substantial evidence in the record to support Judge Drain's evaluation of these factors and his opinion that the settlement was "fair and equitable," TMT Trailer Ferry, 390 U.S. at 424, does not fall below the lowest point in the range of reasonableness, In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983), and is "in the best interests of the Debtors' estate, creditors, and shareholders."[6] Drexel Burnham Lambert, 960 F.2d at 292; (see Transcript of Bankruptcy Proceeding at 72-76.) In particular, the Settlement benefited the Debtor and its creditors by avoiding costs and the inherent uncertainty of litigation and resulted in a substantial return of assets to the Debtor's estate to the benefit of the creditors. (See Motion For Approval ¶ 19.)

Second, the Bankruptcy Court properly declined to consider the objections raised by Appellants because its (only) obligations in evaluating the Settlement were to the Debtors' estate, creditors, and shareholders. (See Bankruptcy Court Transcript at 75 ("I note that to do so would entirely skew the task of a bankruptcy court and be extremely unfair to debtors and trustees in that it would force them, in essence, to continue negotiating and potentially litigating not only with the defendants that they're dealing with in litigation, but also parties who claim an interest in those defendants, which is simply inappropriate.")); In re Drexel Burnham, 960 F.2d 285 at

---

[6] (See Bankruptcy Court Transcript at 34 ("I found no case where there was a clearly articulated settlement subject to subsequent bankruptcy court approval … that gave the non-debtor party the right to walk, and in fact there are many cases that in fact hold the non-debtor party to the deal.")); In re Turner, 274 B.R. 675 (Bankr. W.D. Pa. 2002).

292. The Bankruptcy Court correctly found that the cases cited by Appellants do not support Appellants' argument that their (additional) third-party concerns should have been considered in the Settlement approval process. (<u>See</u> Bankruptcy Court Transcript at 75 ("In those cases cited by the objectors, the settlement at issue either directly affected the objectant in that it affected directly the objectant's own property or the objectant's own rights … or in some cases the settlements were not in a bankruptcy context but involved class actions and the like, where, of course, the court is mindful of protecting the members – or potential members of a class…")); <u>see, e.g.,</u> <u>In re Masters Mates Pilots Pension Plan</u>, 957 F.2d 1020, 1026 (2d Cir. 1992).

### (4)    Cayman Island Proceedings

Appellants argue that the Bankruptcy Court "ignored … that the stays imposed by the Cayman Islands court were predicated on separate applications filed with the Cayman Islands expressly explaining the need for such stays due to the impending June 8 settlement approval hearing." (Appellants' Brief at 28.) Appellees respond that "the Bankruptcy Court properly exercised its discretion in declining to stay the Settlement Approval Hearing out of deference to the Cayman Orders because … those orders did not require that such hearing be stayed … and … considerations of comity could not otherwise require that deference be afforded to the Cayman Orders because they were obtained by the Appellants for the purpose of frustrating U.S. bankruptcy policies." (Appellees' Brief at 26.)

"The principle of comity has never meant categorical deference to foreign proceedings." <u>In re Treco</u>, 240 F.3d 148, 157 (2d Cir. 2001). It is well established that courts in the United States defer to foreign proceedings only if "those proceedings do not violate the laws or public policy of the United States and abide by fundamental standards of procedural fairness." <u>JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.</u>, 412 F.3d 418, 428 (2d Cir. 2005) (internal citations omitted). The Bankruptcy Court's refusal to grant comity to the Cayman

14

Islands Proceedings is reviewed for abuse of discretion. See Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999) ("decision to extend or deny comity to a foreign proceeding [is reviewed] for abuse of discretion.").

The Bankruptcy Court did not abuse its discretion in refusing to grant comity to the Grand Court of the Cayman Islands. See Finanz AG Zurich, 192 F.3d at 246. Among other things, the Bankruptcy Court found that the Settlement hearing on June 8, 2006 in the Bankruptcy Court was not "covered by the Cayman Court's injunction," dated June 7, 2006, because the Bankruptcy Court "[did not] believe [the Settlement] hearing is an action against the Sphinx companies." (Bankruptcy Court Transcript at 35.) And, the Bankruptcy Court properly found that staying its own proceedings in favor of an involuntary bankruptcy petition brought in the Cayman Islands after the Settlement was announced would cause needless delay. (See Bankruptcy Court Transcript at 31 ("[M]y primary reason for not adjourning this hearing is that I believe that an adjournment of the hearing would continue to create the risk that the objectors would misconstrue and misapply the law of settlement agreements in bankruptcy to the detriment of these estates in the sense that they are needlessly spending money responding to issues that are in effect non-issues and, further, to the point of obfuscation or muddying of the law.")); Matter of Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) (courts are not "require[d] … to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding-strategic conduct that is not to be encouraged."); International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd., 441 F.Supp.2d 552, 562 (S.D.N.Y. 2006) ("defendants' petition to the Brazilian courts was less of a parallel proceeding entitled to comity and more of an attempt to defeat this Court's plain jurisdiction.").

**IV.    Conclusion and Order**

For the foregoing reasons, the appeals in 06 Civ. 2826, 06 Civ. 5435, 06 Civ. 5596, 06

15

Civ. 5597, 06 Civ. 5598, 06 Civ. 5634, 06 Civ. 5635, 06 Civ. 5662, 06 Civ. 5663, 06 Civ. 5730,

06 Civ. 5731, 06 Civ. 5758, 06 Civ. 5759 and 06 Civ. 5796 are hereby dismissed.

Dated: New York, New York
      November 16, 2006



Richard M. Berman, U.S.D.J.

